SCANNED at BCF and Emailed on 12-13-23 by CM - 14 pages
(date) (initials) (num)

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA

DEANDRE HUGHES (251297)

VS

Case No. 3:23-cv-00223-MPB -CSW

INDIANA DEPARTMENT OF CORRECTIONS

CHRISTINA REAGLE (COMMISSIONER)

CHARLENE BURKETT (OMBUDSMAN BUREAU)

JENNIFER FARMER (SENTENCE COMPUTATION SPECIALIST)

DANNY MITCHELL (WARDEN)

DEPUTY WARDEN (VIRGINIA SAMPSON)

KENNY ELDER (CLASSIFICATION RELEASE ASSISTANT)

CRYSTAL ROBINSON (CENTRAL OFFICE)

VEDORA HINSHAW (CENTRAL OFFICE)

OFFICER DICKSON (INTERNAL AFFAIRS)

BENTON STROUD (INTERNAL AFFAIRS)

TAMMI POPE (CLASSIFICATION)

TRAVIS GOFFINET (UNIT TEAM STAFF)

KELLY ALLEN (UNIT TEAM STAFF)

DIANE PFEIFFER (GRIEVANCE SPECIALIST)

VICKI HALL (GLOBAL TEL LINK)

KELLI MCMANAWAY (D-DORM CASE MANAGER)

KIM MCCLINTIC (F-DORM CASE MANAGER)

FILED
12/13/2023
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

Comes not the **PLAINTIFF DEANDRE ANTONIO HUGHES** Pro Se, pursuant to **42-USC 1983**

PLAINTIFF moves that this **42-USC 1983** be liberally construed and not held to the same standards as those drafted by lawyers. **See, Erickson v. Pardue, 551 U.S. 89, 94 (2007)** documents filed **Pro Se** are to be liberally construed and Pro Se complaints, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF INDIANA**

1. **COMPLAINT 14TH AMENDMENT BY EXECUTIVE ABUSE OF POWER**

On **10-4-2023** I went in to my case manager's office **Mcmanaway in D-Dorm** and filed an **EMERGENCY GRIEVANCE** about my **Case Plan Credit Time** and a **MEMO** that was posted on the tablet **10-4-2023** about if you opted-in the Case Plan you are to Calculate your time based off of your opt-in date my date I opted in was **October 1, 2010** I have copies of my contract as evidence proving this.. My review was due on **September 7th, 2023** my family spoke to **Charlene Burkett** who is the **Director of the Ombudsman Bureau at the Department of Administration** and informed them when my review date was due. **Mcmanaway/Thomas** never did my review until **October 10th, 2023 violating my due process**. I also completed the PLUS PROGRAM which is a **(REFORMATIVE PROGRAM)** and I should have **EARNED ADDITONAL CREDIT TIME OF 180 DAYS OR 6 MONTHS** I completed **PLUS PROGRAM** in **October 19th, 2022**. On my C.P.C.T. contract where it says **OFFENDER AGREEMENT OF DECLINATION TO PARTICIPATE IN INDIVIDUALIZED CASE PLAN CREDIT TIME.** The first box that is checked states I was to receive my time cut at the completion of the program at my next review which my case manager **Kim Mcclintic** did on **May 25th, 2023** and she was supposed to submit it and didn't. The last sentence in my Case Plan Contract states regardless of when the offender opts-in to using an Individualized Case Plan. The amount of educational credit time is available is capped at the lesser of two (2) years, or one-third (1/3) of the person's total applicable credit time. I should have received my full 2 years and released ***June 20th, 2023*** I completed **RECOVERY WHILE INCARCERATED for 180 days or 6 months, PLUS PROGRAM FOR 180 days or 6 months, COMPLETED a Vocational SOLAR PANEL HELPER CERTIFICATION through IVY TECH for 90 days or 3 months, I opted-in the case plan to receive the rest of my credit time that are claiming that I can only receive (1/3) of my time until my E.P.R.D. which is 120 days each review for a total of 360 days but based off of the MEMO that was posted on the tablet 10-4-2023 stating that my C.P.C.T. calculation should have started on October 1st 2022 not January 1,2023 because I opted in the case plan those who came after January 1st, 2023 are automatically in it.** {***VIOLATING IDOC POLICY 01-04-101 ADULT CLASSIFICATION 1/1/2023 PAGE VII-12, PAGE V11-13, PAGE VII-14, PAGE VII-16, PAGE VII-17***}

On **10-27-23** I get called into my case managers office **Mcmanaway** signing my eligibility form for **COMMUNITIY TRANSITION PROGRAM (STATE FORM 47919) I.C. 11 – 10 – 11.5-4.5.** On my Community Transition Program Paperwork my commencement date was 12-22-2023 I just had two Case Plan Credit Time Reviews submitted the first one was submitted in **September 14th, 2022**, and my Second Review was submitted **May 25th, 2023**. Then they both came back on my paperwork from Central Office on 10/25/2023 by user Crystal Robinson. My out date went from **December 12th, 2023 to April 17th, 2023** I was puzzled about this because my 3rd review should have been applied to my sentence also but it wasn't for some reason. On **11-1-2023** I fill-out a request slip to **Travis Goffinet Unit Team Staff** and asked when **my 3rd review** was submitted to the **Sentence Computation Specialist** and he answered **10-16-2023** how can this be when my first 2 reviews that have been pending over a year came back at the same time on **10-25-2023.** I wrote the **Ombudsman Bureau** a letter and also wrote Charlene Burkett on the tablet about this then miraculously my time cut hits my sentence and on my paperwork **Travis Goffinet** flat out lied on

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF INDIANA**

that request slip. Because on the paperwork from Central Office it shows my 3rd review was submitted **11/2/2023** and answered on the same day by **Vedora Hinshaw, CPCTA – Process to SC Specialist.** I also noticed on my **1st and 2nd review paperwork** that I got back from Central Office showing that **Travis Goffinet** did my reviews he did not do my **1st and 2nd review Kim Mcclintic** did my reviews so my paperwork is false and fake I have all the documents to prove that it is. My final review came back in and made my out date **12-20-2023** I just signed **COMMUNITY TRANSITION PAPERWORK** when my commencement date was **12-22-2023** they violated by due process because my final review made my **COMMUNITY TRANSITION PROGRAM GET DENIED** when it was **APPROVED** in the **Delta System** they knew my final review would make my ineligible for **COMMUNITY TRANSITION PROGRAM (see Exhibit M)**. The administration did this on purpose because they knew that if my reviews were processed on time that I would of went to **COMMUNITY TRANSITION PROGRAM**. So they delayed all my reviews to keep my here at Branchville and this was done on **purpose, maliciously, willful, and or calculated to benefit the employees and the Indiana Department of Corrections.** I have paperwork from **Tammi Pope** my **COMMUNITY TRANSITION PROGRAM GOT DENIED** because I received my time-cut and I am now under 30 days. I have remained conduct clear while I have been incarcerated I am respectful to all staff and I don't cause any issues I don't understand why they would want to not let me get **ANYTHING** that I have earned. All my paperwork I have been getting isn't matching up at all they are **Defrauding the United States Government** by falsifying documents and delaying reviews on purpose. I filed the grievance on **10-4-2023** and I didn't get my response until **11-14-2023** ***{VIOLATING GRIEVANCE PROCESS IDOC POLICY 00-02-301 PAGE 5: C. EMERGENCY GRIEVANCE}*** there is no reason it should take **40** days to hear back per policy it should of only took 5 days. I wrote the Ombudsman Director Charlene Burkett about this I filled out request for remittance **STATE FORM 35720 on 11-2-2023** and paid for postage and I mailed her a letter about how long the grievance process is taking. The grievance specialist Diana Pfeiffer is doing this on purpose to delay resolutions and **(VIOLATING 14TH AMENDMENT DUE PROCESS BY EXECUTIVE ABUSE OF POWER)**. Her answer on the grievance was **PARTIALLY RESOLVED** and she didn't even answer most of what I was asking the only thing she answered as the VICTIM NOTIFICATION nothing about the memo that was posted or the addition credit time I should have been awarded for completing the **PLUS PROGRAM** and receiving my **SOLAR PANEL CERTIFICATION** through **IVY TECH.** I should have received additional credit time awarded for completing a **VOCATIONAL PROGRAM**. I was called in the case mangers office on **12-5-2023** to receive my appeal to the Warden Danny Mitchell it says on the front page if the grievance response the Wardens Appeal Response was on **11/30/2023** I disagreed with is response. This has been over 2 months and I am just receiving the response from the Warden now I am awaiting my appeal to Central Office. I got a memo from **Tammy Pope** that on **November 8, 2023** my Community transition Program Got Denied because of my EPRD Changing. Then on **November 21, 2023** I got another memo stating my Community transition Program Got Denied because I am under 30 days. How can this be the 2nd memo contradicts the first one. **(See Exhibit M).** I also signed a **TEMPORARY LEAVE AGREEMENT FOR A COMMITTED OFFENDER STATE FORM 8522.** It states my leave to begin was on **12/07/2023** but I never got released I signed the paperwork on **12/13/2023 Kenny Elder** is the witness of classification. **(See Exhibit S)** I am being released Monday **12-18-2023** that is **11 days** they held me.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF INDIANA**

**I.D.O.C. POLICY - OFFENDER GRIEVANCE PROCESS: 00-02-301 PAGE 5**

**C. EMERGENCY GRIEVANCES**

An offender may submit an emergency grievance to the nearest staff member, who shall immediately submit the grievance to the Offender Grievance Specialist. The Offender Grievance Specialist shall immediately bring an emergency grievance to the attention of the Warden / designee for review and response within one (1) business day if recording the emergency grievance. The action on any emergency grievance may be appealed by the offender within one (1) business day of receiving the response. Upon the receipt of the appeal, the Offender Grievance specialist shall notify, via email, the Department Offender Grievance Manager that the appeal has been submitted. The Department Offender Grievance Manager shall issue a final Department Decision within (5) business days of the offender filing the grievance. The initial response and final Department decision shall document the Department's determination whether the offender is in substantial risk of imminent danger and the action taken in response to the emergency grievance. The facility may discipline an offender for filing an emergency grievance in bad faith. The determination that a grievance is not an emergency may be appealed through the normal grievance procedures as directed in the policy and administrative procedure.

**I.D.O.C. POLICY - RESPONSE TO GRIEVANCE: 00-02-301 PAGE 10**

If the matter is not an emergency grievance, or a PREA grievance, the Offender Grievance Specialist has fifteen (15) business days from the date that the grievance is recorded to complete an investigation and provide a response to the offender, unless the time has been extended. The Grievance specialist shall use State Form 56892, "Record of Grievance Evidence," to track any physical evidence the offender requests, or the Grievance Specialist determines is necessary to investigate the alleged grievance. Evidence shall be stored and maintained in a designated, secure area with the Office of Investigations and Intelligence in accordance with Policy and Administrative Procedure 00-01-103, "Investigation and Intelligence." State Form 56892 may be used by the Grievance Specialist for the entire length of the grievance process.

Within one (1) business day of recording (subsection B) a completed State Form 45471 "Offender Grievance," the Offender Grievance Specialist shall submit State Form 45471 to the appropriate facility staff / supervisor for response, with a copy forwarded to the respective Quality Assurance Managers for medical grievances. Should a Grievance Specialist request additional evidence from the appropriate facility staff / supervisor, they may submit State Form 56892 with State Form 45471.

If there is a delay in returning the response due to the need to further investigate the offenders concerns, the facility staff / supervisor must notify the Offender Grievance Specialist with a reason for the delay. The Offender Grievance Specialist must document the reason for the delay and, if request by the staff / supervisor, an additional (5) days may be allowed to complete the investigation. The Offender Grievance Specialist shall ensure the offender is notified within one (1) business day of being notified of the delay due to further investigation of the concerns in their grievance.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF INDIANA**

If the offender receives no grievance response within twenty (20) business days of the Offender Grievance Specialist receipt of the grievance, the offender may appeal as though the grievance had been denied. If there is a delay in investigating the offender's grievance issues, the Offender Grievance Specialist may seek approval for a time extension with the request submitted to the Warden/designee, and with a responding email for file noting the offender in writing of the number of days of the extension.

**I.D.O.C. POLICY - V. USE OF OFFENDER GRIEVANCE PROCESS WITHOUT FEAR OF REPRISAL: 00-02-301 PAGE 6**

Reprisal against an offender for filing a grievance is strictly prohibited. The prohibited reprisal includes, but is not limited to, disciplinary action against the offender for filing a grievance. Any offender who believes that they have been the subject of reprisal/retaliation for using the offender grievance process may fila grievance explaining what action or threat of action has been taken against them as a direct result of using the offender grievance proves. The Offender Grievance Specialist shall ensure that grievances related to reprisal/retaliation shall be thoroughly investigated and, if found to be accurate, appropriate action shall be taken against staff or offenders involved in the reprisal/retaliation. An offender's restriction in the use of the offender's grievance process for misuse or abuse of the process shall not be considered a reprisal for use of the offender grievance process and no grievance may be filed regarding this action.

2. **COMPLAINT/ RETALIATION: CRUEL AND UNUSUAL PUNISHMENT**

After I filed the grievance I got **RETALIATED** against by **ADMINISTRATION, UNIT TEAM STAFF, and INTERNAL AFFAIRS for filing the grievance** (***VIOLATING IDOC POLICY 02-04-101 THE DISCIPLINARY CODE FOR INCARCERATED ADULTS***): {***GENERAL PRINCIPLES RETALIATION IS STRICTLY PROHIBITED***}. I filed the grievance on **10-4-203** about the **C.P.C.T. COMPLAINT**, and the memo that was posted on the tablet and how they were not trying to give me all my time cut by putting a Victims Hold on me and not calculating my time from my opt-in date. **(See MOCKOBEE V. DUGAN 2023 U.S. DIST LEXIS 175124)** On my grievance receipt it was dated as received on **10-10-2023 (See Exhibit A PAGE 1) on 10-11-2023 my phone, messaging, kiosk, and visitation were all taken for 30 days**. I never received a write up went to D.H.B. or screening **(VIOLATING I.C. HEARINGS 11-11-5-5) AND (VIOLATING I.C. PROHIBITED DISCIPLINARY ACTION 11-11-5-4)**. They are claiming that I had an inappropriate video visit with my girlfriend Ashley Nichols on **5-14-2023** I got the notice from my case manager **Mcmanaway** on **10-12-2023 (see Exhibit K)**. She was one of the people I filed the grievance on they went back **five (5) months** claiming this happened. ***(VIOLATING INDIANA CONSITUTION ARTICLE 1-12: COURTS OPEN-DUE COURSE OF LAW-ADMINISTRATION OF JUSTICE)*** I asked to see the video and they said no if I done something wrong I want the administration to prove I did. I have never had a write up at all EVER since I have been incarcerated I have all the evidence to prove it with Annual Reviews, and performance evaluations. ***I also went in to the case managers office on 12/8/23 and got a print of from Mrs. Thomas of my conduct history which has zero (0) she also signed and dated it she also put a***

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA

***comment from the office of Investigations and Intelligence on their stating I have never had any conduct.*** I could not call my **Attorneys Robert Canada, Burley Scales, Jeremy Schepper, and Andrew Carroll** I was denied access to them for some reason. I have a right to be able to contact my Attorneys I also had a **DCS Case** that was on one of my daughters that I was needed to communicate to one of my lawyers about I have the evidence of that case to prove it. While they took my phone and blocked me from everybody family, friends, attorneys. ***(VIOLATING MY 14TH AMENDMENT DUE PROCESS BY EXECUTIVE ABUSE OF POWER)***

**5.4 Communication with Attorneys**

A basic corollary to the right of access to the courts is the prisoners right to communicate with an attorney concerning the validity of his or her conviction or the constitutionality of conditions within the detention facility.31 If the prisoner is not represented by counsel, he or she has the right to correspond with an attorney in an attempt to secure legal representation, and this communication may set forth factual elements of his or her claim, even though critical of the prison administration.32 The right to seek legal representation extends not only to the right to communicate with individual members of the bar, but also to the right to seek advice and possible representation from legal -organizations such as the American Civil Liberties Union.33

On **October 30th, 2023** the **CHAPLAIN** came and notified me that my aunty Barbara Hunt had died I am devastated behind this this was my closest aunt and they **blocked** her phone number. I couldn't call her and I have a copy of my phone list showing you that her number was on there I couldn't find out what her condition was this is my mom's sister I have her Obituary (**see Exhibit P**). Then the **CHAPLAIN** comes and sees me again on **November 6th 2023** waking me up telling me that my dad's sister had died **Carla Hughes-dozier** (see **Exhibit P**) she was very close to me to. I couldn't call my dad or any of my kids to find out what was going on the CHAPLAIN wouldn't let me call my family because I was under a restriction. I am so devastated behind this that I had to fill out **a REQUEST FOR HEALTH CARE STATE FORM 45913 to see MENTAL HEALTH (see Exhibit L)**. I was scheduled to see **Julia Doane 11-15-2023** I was on the pass log sheet to go and see her I have never had any mental health issues in my life but this has affected me mentally, emotionally, and personally. This was outrageous to RETALIATE against me in this manner for filing a grievance on **Mcmanaway** and **Travis Goffinet**. I will have to continue to see **Mental Health** about this even after I am released from prison. I filed the grievance about my restrictions and how the Administration retaliated against me on **11-13-2023** in the grievance box in the gym the day my restrictions were supposed to be lifted they were not my girlfriend was still blocked by an Officer for some reason so this is now **OVER** 30 days. My grievance case # for this is **23-164947** it shows as date received on my grievance receipt as **11/29/2023** which is outrageous that is almost two weeks later that they are even looking at it. It says my response from the grievance specialist is due on **12/20/2023** which is my **E.P.R.D.** date so. I will not be able to have the grievance process available to me because I am due to be released from prison before I would be able to appeal to the Warden. The response date that it shows on the receipt from the day that I filed the grievance on **11-13-2023** and the response date is **12-20-2023** is taking **37 days** to be answered.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF INDIANA**

***INDIANA CONSTITUTION ARTICLE 12: 12. COURTS OPEN-DUE COURSE OF LAW-ADMINISTRATION OF JUSTICE***

All courts shall be open and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase, completely, and without denial, speedily, and without delay.

3. **DECLARATION OF JENNIFER FARMER:** (See **Cause No. 36D02-0607-MR-1** ZACHARIAH C.J BLANTON, V STATE OF INDIANA) **October 13, 2023**

The undersigned, Jennifer Lee Farmer, under the penalties of perjury, declares the following:

1. I am an adult over the age of 18 and competent to testify.
2. I am the Director of the Sentence Computation/Release Unit with the Indiana Department of Correction ("IDOC").
3. As Director, I am involved in the execution of credit time within IDOC, and am qualified to speak to IDOC policy with regard to the earning of credit time and the computation of sentences.
4. My testimony is based on my personal knowledge and a review of official records maintained by the IDOC. These records are regularly kept and relied upon during the course of IDOC's operations.
5. Effective January 1, 2022, the legislature amended the time credit statutes to allow for an Individualized case management plan approved by the IDOC. The individualized case management plan was instituted as Case Plan Credit Time ("CPCT").
6. Prior to CPCT, an offender had to meet certain eligibility requirements prior to being given permission to pursue a traditional course or activity from a per-established list of programs (i.e., vocational, career and technical, substance abuse, and reformative). The availability of a particular traditional program varies from facility to facility, as well as from housing unit to housing unit within a facility. Suffice to say, the availability of traditional educational programs varied greatly throughout IDOC facilities and housing units.
7. Once an offender decided to pursue a traditional educational program, they were required to fully complete the requirements for that program prior to being given any educational credit. After completion, a tie cut request would be sent to sentence computation staff. If it was determined that the offender satisfied the requirements, the time cut was then authorized. The time cut was then reflected on the offenders earliest possible release date ("EPRD") and this information was then communicated to the offender and the offender's assigned caseworker.
8. Because the traditional educational programs took several weeks, months, or even years to complete, the programs were not always completed for various reasons. An example would be an offender being released to parole, to an offender receiving a conduct violation that would necessitate dropping the offender from the program.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF INDIANA**

9. This "all or nothing" method for providing educational credit time to an offender equated to less than 1% of all offenders committed to, or having served a commitment with, the IDOC earning the statutory maximum educational credit.
10. With the passage of HEA 1120, the legislature amended the time credit statutes to allow for an individualized case management plan or CPCT.
11. For offenders committed after January 1, 2022, these offenders are mandatorily enrolled in CPCT to earn the educational credit time. However in October 2021, the IDOC allowed eligible offenders previously committed to enroll in CPCT during an opt-in period to earn the remainder of their educational credit time.
12. CPCT was designed to meet the specific rehabilitative needs of an offender. These needs are based on the Indiana Risk Assessment System ("IRAS"), which is a system used to identify an offender's criminogenic needs and risk to reoffend.
13. Second, and more importantly, CPCT was designed with flexibility in mind so that an offender could maximize their educational credit time while incarcerated. This was aimed to promote rehabilitation by offering an offender the ability to participate and earn educational credit so that they could see concrete results for the work that they put in under CPCT.
14. The goal is maximize educational credit time was due to the fact that less than 1% of all offenders had earned the statutory maximum.
15. The flexibility comes from the ability to implement CPCT in all IDOC facilities, as well as every housing unit within each facility. CPCT is even available in restrictive status housing, where offenders in these housing units would be eligible for traditional educational programs.
16. Instead of earning educational credit time upon the completion of a traditional program, offenders are now provided with educational credit time at their next periodic review.
17. For offenders with less than six years remaining their earliest projected release date ("EPRD") at the time they opt-in, they are provided with three total reviews. For offenders with more than six years remaining to their EPRD, they are provided with an annual review.
18. An important note, even if an offender opt-'in to CPCT, they are still eligible to complete traditional educational programs approved by the IDOC. However, the completion of these traditional programs is taken into consideration as participation in CPCT.
19. Educational credit earned under CPCT is based on participation and progress made related to the identified goals and objectives in an offender's case plan assessment. CPCT allows offenders to earn educational credit by completing programs and other functions that would not have historically been approved by the IDOC for educational credit time. As long as an offender makes sufficient progress towards these goals and objectives, they are eligible to earn the full award for the respective CPCT review.
20. If an offender is not awarded educational credit at any given periodic review, disagrees with the periodic review, or believes they should have been given more educational credit time, the offender can utilize the offender grievance process to appeal the decision.
21. For those who opt-in to CPCT, the amount of educational credit that an offender may earn to each review will depend on their EPRD as of January 1, 2022.
22. Offenders that opt-in to CPCT are eligible to earn the lesser of:
    I. One-third of their total applicable credit time between January 1, 2022 through their EPRD on January 1, 2022 or

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA

II. Two years (four years for those committed before July 1, 2014).

23. The decision to use January 1, 2022 as the date with which to calculate the educational credit time an offender was eligible to earn when opting-in was due to several reasons. First, CPCT reviews were not being performed until after this date. Second, offenders committed prior to January 1, 2022, had an opportunity to complete traditional programs and earn educational credit time to earn the statutory maximum. Lastly, and most importantly, the IDOC is required to ensure that educational time cuts provided to offenders is proportional to the work completed and the time served.

24. Offenders that opt-in to CPCT can still earn the statutory maximum of educational credit time. This is the lesser of:

I. Two years (four years for offenders committed before July 1, 2014 or

II. One-third their total applicable credit time

25. However, the maximum amount of educational credit time an offender is statutorily entitled to earn, and the maximum amount of educational credit time an offender can practically earn under CPCT may be different based on the programs completed prior to opting-in, conduct, and time remaining to an offender's EPRD on January 1, 2022.

4. <u>**OMBUDSMAN BUREAU DIRECTOR: (CHARLENE BURKETT)**</u>

**11-11-1.5-1. Bureau defined.**

As used in this chapter, bureau refers to the department of correction ombudsman bureau established within the department of administration by IC 4-13-1.2-3. The term includes individuals approved to act in the capacity of ombudsmen by the department of correction ombudsman bureau.

**HISTORY:** P.L.292-2001, 5.
**NOTES TO DECISIONS**

**Legislative Intent.**
Inmates complaint seeking relief relating to alleged prison conditions was properly dismissed pursuant to IC 34-58-1-2 because the complaint did not state, or even suggest, that the inmate pursued any administrative remedies prior to filing his action, and it was presumed that the prison had a system for addressing prisoner grievances; it was presumed that the Indiana State Prison had a system for addressing prisoner grievances. Further, the legislature intended in IC 11-11-1-1 et seq. and IC 4-13-1.2-5 to create an additional layer of administrative review for the protection of prisoners. Abdul-Wadood v. Batchelor, 865 N.E.2d 621, 2007 Ind. App. LEXIS 863 (Ind. Ct. App. 2007).

**11-11-1.5-2. Ombudsman defined.**
As used in this chapter, ombudsman means an employee of the bureau or an individual approved by the bureau to investigate and resolve complaints regarding the health and safety of any person, and violations by the department of specific laws, rules, or written policies.
**HISTORY:** P.L.292-2001, 5.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA

## 5. BURNS INDIANA STATUTES ANNOTATED

### 11-11-5-5. Hearing.

**(a)** Before imposing any disciplinary action, the department shall afford the person charged with misconduct a hearing to determine his guilt or innocence and, if guilty, the appropriate action. The charged person may waive his right to a hearing. Also, before a charge is made, that person and a departmental employee may agree to the types of disciplinary action enumerated in sections 3(2) and 3(3) [IC 11-11-5-3(2) and IC 11-11-5-3(3)] of this chapter if no record of the conduct or disciplinary action is placed in the persons file. In connection with the hearing, the person is entitled to:

**(1)** Have not less than twenty-four (24) hours advance written notice of the date, time, and place of the hearing, and of the alleged misconduct, and the rule the misconduct is alleged to have violated;

**(2)** Have a reasonable time to prepare for the hearing;

**(3)** Have an impartial decision maker;

**(4)** Appear and speak in his own behalf;

**(5)** Call witnesses and present evidence unless the person conducting the hearing finds that to do so would subject a witness to a substantial risk of harm, or would result in the admission of irrelevant or repetitive testimony;

**(6)** Confront and cross-examine witnesses, unless the person conducting the hearing finds:

**(A)** That to do so would subject a witness to a substantial risk of harm;

**(B)** That to do so would result in the admission of irrelevant or repetitive testimony; or

**(C)** Based upon good cause stated on the record, that a witness is unavailable to attend the hearing;

**(7)** Have advice and representation by a lay advocate of his choice, if that lay advocate is available in the institution at the time of the hearing, in those hearings based upon a charge of institutional misconduct when the department determines he lacks the competency to understand the issues involved or to participate in the hearing, or when the punishment may be that specified in:

**(8)** Have a written statement of the findings of fact, the evidence relied upon, and the reasons for the action taken;

**(9)** Have immunity if his testimony is used in any criminal proceeding;

**(10)** Have his record expunged of any reference to the charge if he is found not guilty or if a finding of guilt is later overturned; and

**(11)** Be reimbursed for state wages lost due to action taken pending the hearing if he is found not guilty or if a finding of guilt is later overturned.

Any finding of guilt must be supported by a preponderance of the evidence presented at the hearing.

**(b)** The department may not charge a committed person with a disciplinary rule violation unless it does so within ten (10) days of the date it becomes aware of that persons alleged involvement in misconduct.

**(c)** Consistent with the objective of adequate and effective representation and the integrity of the hearing system the department may adopt regulations which may limit the pool of persons eligible to advise and represent accused persons to inmates in the general population. In any event, facility or program employees and inmates may not directly or indirectly charge for advice or representation.

**(d)** Any statement made by an accused person to departmental employees during the course of an investigation or hearing is not admissible against him in any criminal proceeding arising out of the same incident unless the accused:

**(1)** Was informed:
**(i)** Of his right to remain silent;
**(ii)** That anything he says can and will be used against him in court;
**(iii)** Of his right to have an attorney present during any questioning;
**(iv)** His right to have an attorney appointed for him if he is unable to afford an attorney; and
**(v)** That if he decides to answer any questions, he may stop answering at any time during the interrogation; and

**(2)** Voluntarily, knowingly, and intelligently waived his rights under subdivision (1) to remain silent or to have an attorney present, or both.

**HISTORY:**
IC 11-11-5-5, as added by Acts 1979, P.L. 120, 4; 1980, P.L. 87, 7; P.L.99-1986, 3; P.L.135-1993, 4.

**Notes to Decisions**

**Analysis:**
Due Process.
Expungement of Record.
Witnesses.
Appearance at Hearing.

**Due Process.**

Federal court could enforce consent decree which incorporated the procedural protections accorded to prisoners charged with disciplinary offenses in this section, provided the inclusion of this section was designed to remedy federal constitutional violations underlying the complaint. Komyatti v. Bayh, 96 F.3d 955, 1996 U.S. App. LEXIS 24830 (7th Cir. Ind. 1996).

**<u>11-11-5-4. Prohibited disciplinary action.</u>**

The department may not impose the following as disciplinary action:

**(1)** Corporal punishment.

**(2)** Confinement without an opportunity for at least one (1) hour of exercise five (5) days each week outside of immediate living quarters, unless the department finds and documents that this opportunity will jeopardize the physical safety of the offender, or others, or the security of the facility or program.

**(3)** A substantial change in heating, lighting, or ventilation.

**(4)** Restrictions on clothing, bedding, mail, visitation, reading and writing materials, or the use of hygienic facilities, except for abuse of these.

**(5)** Restrictions on:
**(A)** Medical and dental care;
**(B)** Access to courts, unless a committed person has brought a claim in a state or an administrative court, that the court determines to be frivolous, unreasonable, or groundless;
**(C)** Access to legal counsel, government officials, or grievance proceedings; and
**(D)** Access to personal legal papers and legal research materials.

**(6)** A deviation from the diet provided to other committed persons in that facility or program.

(7) Extra work exceeding a total of twenty (20) hours for one (1) rule violation, or exceeding four (4) hours in any twenty-four (24) hour period.

**HISTORY:** IC 11-11-5-4, as added by Acts 1979, P.L. 120, 4; P.L.146-1995, 1; P.L.43-2002, 2.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF INDIANA**

6. **EXHIBITS / EVIDENCE**
   1) **Exhibit/Appendix-A**: Grievances Case #'s **23-162212, 23-164947, 144042**: **20 PAGES**
   2) **Exhibit/Appendix- B**: Offender Evaluation and Performance Reports: **7 PAGES**
   3) **Exhibit/Appendix- C**: My Individualized Case Plan Contract: **1 PAGE**
   4) **Exhibit/Appendix- D**: Unit Team Case Plan Credit Time Scoring Reports: **3 PAGES**
   5) **Exhibit/Appendix- E**: C.P.C.T. Time Cut Sheets from Central Office: **7 PAGES**
   6) **Exhibit/Appendix- F**: Individualized Case Plan Completion Sheets: **4 PAGES**
   7) **Exhibit/Appendix- G**: Clear Conduct Report signed by Mrs. Thomas 12/8/2023 / Good Behavior Rewards: **3 PAGES**
   8) **Exhibit/Appendix- H**: Annual Review 8/10/2023: **1 PAGE**
   9) **Exhibit/Appendix- I**: Letter to Ombudsman Bureau Director Charlene Burkett: **3 PAGES**
   10) **Exhibit/Appendix- J**: House Enrolled Act No. 1120, HEA 1120: **7 PAGES**
   11) **Exhibit/Appendix- K**:Disciplinary Memo from Internal Affairs and Unit Team : **2 PAGES**
   12) **Exhibit/Appendix- L**: Mental Health Request for Health Care State Form 45913 **1 PAGE**
   13) **Exhibit/Appendix- M**: Memo from Tammy Pope about Community Transition Program being denied: **2 PAGES**
   14) **Exhibit/Appendix- N**: Notice of Community Transition Program Eligibility State Form 49719: **1 PAGE**
   15) **Exhibit/Appendix- O**: Request Slip State Form 36935 From Unit Team Travis Goffinet about when my review was submitted to Sentence Computation Specialist: **1 PAGE**
   16) **Exhibit/Appendix- P**: Obituaries of my 2 Aunties Barbara Hunt and Carla Hughes-Dozier: **3 PAGES**
   17) **Exhibit/Appendix- Q**: Copies of my phone list: **2 PAGES**
   18) **Exhibit/Appendix- R**: Copies of my DCS Case Paperwork: **1 PAGE**
   19) **Exhibit/Appendix- S:** Temporary Leave Agreement State Form 8522: **1 PAGE**

7. **WHY MY CASE SHOULD BE IN FEDERAL COURT**

They broke federal laws and state statutes and my 14th AMENDMENT DUE PROCESS was violated by **EXECUTIVE ABUSE OF POWER** also violating the **Indiana Constitution Article 12**. There is discrimination falsifying and or not producing factual documents the staff at this facility abuses there powers at all levels. The actions omission of these **employees** that caused this loss are **criminal,** clearly outside the scope of the employee's employment, **malicious, willful, and wanton** or **calculated to benefit the employees personally**. I have been through a great deal of mental and emotional stress and this has also put my family threw a lot also. I am seeking financial compensation $300,000 in **Punitive Damages**, $300,000 in **Compensatory Damages**, and $300,000 in **Nominal Damages** totaling **$900,000.**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA

8. MAIN ARGUMENTS
   a) My review dates for my C.P.C.T. were delayed on purpose so I would have to do all my time in prison and my **Community Transition Program** would be denied. The request slip from **Unit Team Travis Goffinet** he dated it was done on **10-16-2023** and my paperwork from Central Office say it was done on **11-02-2023.** The paperwork from central office states that my review was done on that day also it was not it was done by Mrs. Thomas on **10-10-2023** my 3rd and final review was to be submitted in **September 2023** according to Charlene Burkett Director of Ombudsman. **(See Exhibit O, See Exhibit D, Exhibit E)**
   b) The 2 memos from **Tammy Pope** about my Community Transition Program being denied because I received my time cut on **November 8, 2023** then I received another memo on **November 21, 2023** saying it was denied because I am under 30 days. **(See Exhibit M)**
   c) How my C.P.C.T, review paperwork does not match up with my paperwork from here and the staff members that did my reviews. **(See Exhibit D, See Exhibit E)**
   d) The retaliation that was done to me about filing the C.P.C.T. complaint taking my **visits, phone, messaging, kiosk, and blocking my attorneys** on my phone list, family, and friends for **30 days** and I never received a conduct report went to **DHB, SCREENING, or had a HEARING.** Everything got taken from me the day after my grievance from the Grievance Specialist on my receipt says received **10-10-2023** the very next day on **10-11-2023** I had all these restrictions and punishment done to me. **(See Exhibit A Page 1, See Exhibit K)**
   e) How I was denied a phone call on 2 separate instances when my Moms Sister died and my Dads Sister died because I was under restriction
   f) How I should have received my full 2 years in earned credit time for completing **R.W.I., Plus Program, Received** my **Solar Panel Helper Certification** through **Ivy Tech**, and received the rest through C.P.C.T. my time should have been calculated from when I opted-in not January 1, 2022. **(See Exhibit F), (See Exhibit J)**
   g) **Violating the Indiana Constitution Article 12, Violating I.C. 11-11-5-5 HEARING, and I.C.11-11-5-4 PROHIBITED DISCIPLINARY ACTION**
   h) How the Grievance Specialist is violating the **Grievance policy 00-02-301**
   i) How I have been needing to see mental health about his and I have never had a problem with my mental health in my life until now **(see Exhibit L)**
   j) Blocking my contact with all my attorneys **Andrew Carroll, Robert Canada, Jeremy Schnepper, and John Scales** I have copies of my phone list **(see Exhibit Q)**

**OMBUDSMAN BUREAU AT THE DEPARMENT OF ADMINISTRATION HERE ARE MY CASE NUMBERS I USED THE REQUEST TAB ON MY TABLET TO MESSAGE THE DIRECTOR CHARLENE BURKETT AND MY GRIEVANCE CASE NUMBERS THAT I FILED AT BRANCHVILLE CORRECTIONAL FACILITY.**

1) **23-000000113070 10/4/2311:05 A.M. AUTHOR: DOC-STAFF**
2) **23-000000113071 10/4/2311:04 A.M. AUTHOR: DOC-STAFF**
3) **23-000000115041 11/6/23 9:44 A.M. AUTHOR: DOC-STAFF**
4) **23-000000117197 12/13/23 8:23 A.M. AUTHOR: DOC-STAFF**
5) **23-000000117196 12/1323 8:40 A.M. AUTHOR: DOC-STAFF**

a) **GRIEVANCE CASE NUMBERS: 23-162212, 23-164947, 144042**

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF INDIANA

9. **FILING FEE**

I would like to proceed in **United States District Court** and request to proceed without prepaying the full filing fee.

**I am not sure if you want my Exhibits / Appendixes now or at a later date please inform me of what I should do please and thank you.**

**Respectfully Submitted by:** DEANDRE ANTONIO HUGHES

**Date:** 12-13-23